MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
john.battenfeld@morganlewis.com
Brian D. Fahy, Bar No. 266750
brian.fahy@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:	+1.213.612.2500
Fax:	+1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Amy A. McGeever, Bar No. 296758
amy.mcgeever@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:	+1.415.442.1000
Fax:	+1.415.442.1001

Attorneys for Defendant
AMAZON LOGISTICS, INC. incorrectly sued as
AMAZON.COM, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA CHAMPION, on behalf of herself, all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM LLC., a Delaware limited liability company; NEA DELIVERY, LLC d/b/a FAST DELIVERY SERVICES, a California limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:18-cv-05222-MMC<br><br>**DEFENDANT AMAZON LOGISTICS' NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, STAY THE PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD NYHAN AND BRIAN FAHY**<br><br>Hon. Maxine M. Chesney<br><br>Date:	June 14, 2019<br>Time:	9:00 a.m.<br>Courtroom:	7 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 36474076.6

NO. 3:18-CV-05222-MMC
DEF. AMAZON LOGISTICS' MTC ARBITRATION

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 14, 2019 at 9:00 a.m. (or as soon thereafter as the matter may be heard in Courtroom 7, of the above-entitled Court), Defendant Amazon Logistics, Inc. incorrectly sued as Amazon.Com, LLC ("Amazon") will move the Court for an order compelling Plaintiff Yolanda Champion to submit her claims against Amazon and Defendant NEA Delivery LLC to final and binding arbitration on an individual basis and to dismiss her class and collective action claims, and to dismiss, or in the alternative, stay this action pending resolution of Plaintiff's claims in the arbitral forum. Amazon seeks to enforce the Binding Arbitration Agreement under equitable estoppel, agency, and third party beneficiary theories.

The foregoing motion is based on this notice of motion, the accompanying memorandum of points and authorities, the declarations of Richard Nyhan and Brian Fahy filed concurrently herewith and all exhibits attached thereto, all pleadings and motions on file in this action, and on such further written or oral argument as may be permitted by this Court.

**STATEMENT OF RELIEF SOUGHT**

Defendant respectfully requests that this Court grant its motion to compel individual arbitration of all of Plaintiff's claims and dismiss Plaintiff's class and collective action claims, and dismiss, or in the alternative, stay the action pending arbitration.

Dated: May 10, 2019                    MORGAN, LEWIS & BOCKIUS LLP

                                       By   /s/ *Brian D. Fahy*
                                          John S. Battenfeld
                                          Brian D. Fahy
                                          Amy A. McGeever
                                          Attorneys for Defendant AMAZON
                                          LOGISTICS, INC. (incorrectly sued as
                                          AMAZON.COM, LLC)

## I.      INTRODUCTION AND REQUESTED RELIEF

In contravention of an agreement to arbitrate any and all employment-related disputes on an individual basis, Plaintiff Yolanda Champion filed a class and collective action lawsuit against Defendants Amazon.com, LLC ("Amazon")[1] and NEA Delivery, LLC ("NEA") d/b/a Fast Delivery Services (hereinafter collectively "Defendants"), alleging various wage and hour claims under California law and the FLSA.  The Court should compel Plaintiff to arbitrate her claims on an individual basis.

Plaintiff entered into a written, binding agreement to resolve her employment-related disputes exclusively through binding arbitration on an individual basis and agreed to be bound by the Binding Arbitration Agreement, which is governed by the Federal Arbitration Act ("FAA"). As the U.S. Supreme Court has repeatedly confirmed, the FAA reflects "a liberal federal policy favoring arbitration" requiring courts to enforce arbitration agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749, 179 L. Ed. 2d 742 (2011) (internal quotation omitted).  Recently, in *Lamps Plus, Inc. v. Varela*, 587 U.S. ___ (2019) and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1616, 1632 (2018), the Supreme Court definitively held that, under the FAA, arbitration agreements providing for individualized proceedings must be enforced as written.  Pursuant to *Concepcion* and *Epic Systems*, class and collective action waivers must be enforced by a court and any state law to the contrary is preempted.  The Court, therefore, should compel the action to arbitration on an individual basis and dismiss Plaintiff's class and collective action claims, or in the alternative, stay the action pending arbitration.

## II.      STATEMENT OF RELEVANT FACTS

### A.      FACTUAL BACKGROUND

#### 1.      The Parties

Defendant NEA Delivery, LLC's ("NEA") business involved its delivery drivers making local deliveries in small vans or passenger vehicles (which did not require a commercial drivers' license to operate) for its customers, including Amazon, in the states in which NEA operated.

---

[1]  Plaintiff incorrectly sued Amazon.com, LLC.  The proper entity is Amazon Logistics, Inc.

Declaration of Richard Nyhan ¶ 5. Defendant Amazon, among other things, operates an online retail shopping service through which consumer merchandise and other products may be purchased from Amazon or third-party sellers.

Plaintiff Champion ("Plaintiff") delivered packages for NEA to Amazon customers. Compl. ¶¶ 21, 22; Nyhan Decl. ¶ 6. She picked up packages from an Amazon distribution center located in San Leandro, California. Nyhan Decl. ¶ 6. All of Plaintiff's deliveries were made to local customers—she did not leave California to make any deliveries. *Id*.

### 2. The Parties Entered Into a Written Arbitration Agreement That Includes a Class Action Waiver Provision.

On March 24, 2017, Plaintiff electronically signed the Binding Arbitration Agreement ("Agreement") with NEA. Nyhan Decl. ¶ 4, Exh. A. Pursuant to the underlined heading "<u>Agreement to Arbitrate Disputes</u>," the Agreement provides, in relevant part, as follows: I agree and acknowledge that … NEA Delivery, LLC (my "Worksite Employer"), and I will utilize binding arbitration to resolve all disputes that may **arise out of the employment context**." *Id*. Under the bilateral Agreement, Plaintiff further agreed that her claims against NEA and its agents would be subject to arbitration under the FAA. *Id*. at 1.A. ("I agree that **any claim, dispute, and/or controversy that either I may have against my Worksite Employer** [NEA] … or their respective owners, directors, officers, managers, employees, **agents** … or that my Worksite Employer… may have against me, **arising from, related to, or having any relationship or connection whatsoever with** my … **employment by,** *or any other association with my Worksite Employer*… **shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act** (9 U.S.C. §§ 1, et seq.) in conformity with the procedures of the California Arbitration Act …") (Emphasis added.)

The Agreement also contains a class action and collective action waiver provision, stating that Plaintiff's claims "must be brought in my individual capacity … and not as a plaintiff or class member in any purported class action, collective action or representative action proceeding." *Id*. at 1.C.

The Agreement was not mandatory. Plaintiff had a right to opt out of arbitration within 30 days. *Id*. at 1.D. However, she did not do so. Nyhan Decl. ¶ 4.

### B.     PROCEDURAL BACKGROUND

On August 24, 2018, Plaintiff filed this putative class and collective action in the Northern District of California, alleging that NEA and Amazon (collectively "Defendants") improperly classified her, and allegedly similarly situated individuals, as independent contractors and that "each defendant acted in all respects pertinent to this action as the agent of other defendants, carried out a joint scheme, business plan or policy …" Dkt. 1, Compl. ¶¶ 1, 9 (emphasis added).[2] Plaintiff brings claims for alleged (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failed to pay hourly wages; (4) failure to provide accurate wage statements; (5) waiting time penalty for failure to timely pay all final wages; (6) Unfair Competition Law ("UCL") violations; and (7) failure to pay all hours worked under the FLSA (29 U.S.C. § 201). *Id*.

This action was originally assigned to Judge Chen. However, Amazon filed an Administrative Motion to Consider whether this action should be related to the Miller action, in light of the similarities in class definitions alleged in this action and Miller. *See* Dkt. 31. Specifically, both actions purport to represent a class comprised of all employees of all Amazon delivery service providers ("DSPs") in California. This Court determined that this action was related to *Miller*, which resulted in this action being transferred to this Court. *See* Dkt. 33. The parties filed a stipulation requesting that the Court set a briefing schedule first on Amazon's motion to compel arbitration, as the parties agree the Court's ruling on this motion could obviate the need for any other responsive motions.[3]

---

[2] Contrary to the complaint, Plaintiff was classified as an employee of NEA. Nyhan Decl. ¶ 4.
[3] If the Court declines to compel arbitration, and as stated in the stipulation, Amazon plans to bring a motion to dismiss and/or strike Plaintiff's vague, ambiguous, and overbroad class definition, and dismiss or sever the class claims purporting to represent Amazon Flex Delivery Partners. Plaintiff was never an Amazon Flex Delivery Partner, and there are first-filed, pending actions in the Northern District and other federal courts and several state courts where Amazon Flex Delivery Partners have brought claims alleging they were misclassified as independent contractors. *See Keller v. Amazon*, Case No. 4:17-cv-02219, and *Ponce v. Amazon,* Case No. 3:17-cv-00288, which Judge Seeborg determined were related and both actions are pending before him.

Counsel for Amazon provided Plaintiff's counsel with Plaintiff's executed Agreement. Declaration of Brian Fahy ¶ 2. Plaintiff has refused to submit to arbitration. *Id*.

### III.  LEGAL ARGUMENT

#### A.  <u>PLAINTIFF'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION.</u>

Plaintiff expressly agreed to binding, individual arbitration of all the claims she attempts to assert in this action. Plaintiff's claims should be compelled to arbitration on an individual basis.

##### 1.  The FAA requires Federal Courts to Compel Arbitration.

The Agreement states that it is governed by the FAA. Nyhan Decl. at Exh. A (at ¶ 1.A.). The FAA requires federal courts to compel the arbitration of any claims covered by a valid arbitration agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act . . . mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Consistent with our "national policy favoring arbitration when the parties contract for that mode of dispute resolution," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), Section 2 of the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable" to the same extent as any contract, and Section 4 commands that a district court "shall" issue "an order directing the parties to proceed to arbitration in accordance with the terms of [their] agreement." 9 U.S.C. §§ 2, 4; *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (the FAA "reflects the overarching principle that arbitration is a matter of contract . . . [a]nd consistent with that text, courts must rigorously enforce arbitration agreements according to their terms") (quotations omitted) ("*Italian Colors*.") Any doubts as to the arbitrability of any issue must be resolved in favor of arbitration. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452 (2003). To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Id*. at 626; *see*, *e.g.*, *Cobarruviaz v. Maplebear, Inc.,* 143 F. Supp. 3d 930 (N.D. Cal. 2015) (compelling arbitration for independent contractors alleging misclassification claims under FLSA and California law); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (upholding arbitration agreement and compelling arbitration of claim for unpaid wages under the California Labor Code); *McManus v. CIBC World Mkts. Corp.*, 134 Cal.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 36474076.6

5

NO. 3:18-CV-05222-MMC
DEF. AMAZON LOGISTICS' MTC ARBITRATION

1  Rptr. 2d 446 (2003) (compelling arbitration of California Labor Code claims); *Epic Systems*, 138

2  S.Ct. at 1628 (compelling individual arbitration of FLSA and state law claims).

3        On a motion to compel, the FAA limits a court's inquiry to "determining (1) whether a

4  valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

5  dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  When

6  the determination is affirmative as to both questions, the FAA "requires the court to enforce the

7  arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

8  207 F.3d 1126, 1130 (9th Cir. 2000).  Here, Amazon easily answers both questions in the

9  affirmative; as a result, Plaintiff's claims must be compelled to individual arbitration in

10  accordance with the terms of the Agreement.

11        **2.**      **Plaintiff Agreed to Be Bound by A Valid Arbitration Agreement.**

12        Plaintiff cannot dispute that she is bound by the terms of the Agreement.  Plaintiff

13  electronically signed the Agreement.  Nyhan Decl. ¶ 3.[4]  Under the FAA, an arbitration

14  agreement is enforceable "save upon such grounds as exist in law or in equity for the revocation

15  of any contract." 9 U.S.C. § 2.  The effect of Section 2, "is to create a body of federal substantive

16  law of arbitrability, applicable to any arbitration agreement…" *Perry v. Thomas*, 482 U.S. 483,

17  489 (1987).  Although Section 2 allows a court to refuse to enforce an arbitration agreement,

18  "upon such grounds as exist at law or equity for the revocation of any contract," 9 U.S.C. § 2, this

19  savings clause does not "preserve state-law rules that stand as an obstacle to the accomplishment

20  of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).

21        In *Armendariz v. Found. Health Psychcare Services, Inc.,* 24 Cal. 4th 83, 98 (2000), the

22  California Supreme Court applied a "sliding scale" analysis to determine whether an arbitration

---

[4] "A party's acceptance of an agreement to arbitrate may be express . . . A signed agreement is not necessary, however, as a party's acceptance may be implied in fact." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,* 55 Cal. 4th 223, 236 (2012).  An employee's continued employment constitutes implied in fact acceptance of an arbitration agreement proposed by the employer.  *Craig v. Root and Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (cited with approval by *Pinnacle Museum,* 55 Cal. 4th at 1224).[4]  Further, the FAA also does not require that an arbitration agreement is signed.  *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1986) (under the FAA, "a party may be bound by an agreement to arbitrate even absent a signature.... [W]hile the Act requires a writing, it does not require that the writing be signed by the parties."); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) (same).

agreement was enforceable pursuant to the doctrine of unconscionability. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. at 114. Whether and the degree to which the *Armendariz* decision remains valid in light of the Supreme Court's decision in *Concepcion* remains undecided and unresolved.  It is clear, however, that state law cannot hold agreements to arbitrate to a higher standard than is generally applicable to other contracts without running afoul of the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1 (1984); *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  Further, state law cannot act to prohibit arbitration of certain types of claims or require certain types of procedures as a prerequisite to arbitration. *Concepcion*, 131 S. Ct. at 1747; *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1203-1204 (2012); *Italian Colors*, *supra*, 133 S. Ct. at 2310.  Indeed, a paramount purpose behind the FAA involved ending state roadblocks to the enforcement of agreements to arbitrate. *Southland*, 465 U.S. at 10.  Here, there is no question that the Agreement is enforceable as to Plaintiff's claims.

### a.  The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability refers to "oppression" or "surprise" due to unequal bargaining power that results in no real negotiation and an absence of meaningful choice. *Pinnacle Museum*, 55 Cal. 4th at 247.  The procedural element of unconscionability may arise in connection with adhesion contracts, but the finding of an adhesion contract does not "per se" render the arbitration agreement unenforceable. *Id.; see also Graham v. Scissor-Tail, Inc*., 28 Cal. 3d 807, 817 (1981); *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) (citing cases to demonstrate that even "a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis").  Here, the Agreement was not mandatory as explained above.  The Court must initially presume that the contract is valid and was negotiated at arm's length, i.e., "fair and regular." Cal. Civil Code § 3545.

Here, the Agreement is provided as a stand-alone document entitled, "**Binding Arbitration Agreement**." Nyhan Decl. at Exh. A (emphasis in original).  Above her signature in

large bold, capital letters, Plaintiff is advised, "**DO NOT SIGN UNTIL YOU HAVE READ THIS AGREEMENT.**" *Id*. (emphasis in original).  Moreover, despite the opportunity to opt-out of arbitration, Plaintiff did not submit an opt-out form.  Nyhan Decl. ¶ 4.

### b. The Agreement Is Not Substantively Unconscionable.

Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract.  *Armendariz*, 24 Cal. 4th at 114.  California courts provide that to establish substantive unconscionability, the terms must be "so one-sided as to shock the conscience."  *Kinney v. United HealthCare Services, Inc.*, 70 Cal. App. 4th 1322, 1330 (1999).  The California Supreme Court held in *Armendariz* that the following five standards must be met in a mandatory employment arbitration agreement: a neutral arbitrator, adequate discovery, a written award, the availability of all of the types of relief that would otherwise be available in court, and payment by the employer of any arbitration fees beyond what the employee would have to pay in court.  *Armendariz at* 102-114.  The Agreement satisfies each of the *Armendariz* standards.  *See* Nyhan Decl. at Exh. A (*e.g.* "the arbitrator shall be a retired California Superior Court Judge, or otherwise qualified individual to whom the parties mutually agree"; "all of the Act's other mandatory and permissive rights to discovery"; "Awards shall include the arbitrator's written reasoned opinion."; "my Worksite Employer … agree to pay all types of costs that are unique to arbitration…").  Thus, Plaintiff cannot legitimately argue that the Agreement is substantively unconscionable.

### 3. All of Plaintiff's Claims Must Be Arbitrated Individually.

Plaintiff alleges Labor Code and FLSA violations against all Defendants arising out of her employment.  Under the Agreement, Plaintiff expressly agreed that "any claim, dispute, and/or controversy that either I may have against my Worksite Employer [NEA]… arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or any other association with my Worksite Employer… shall be submitted to and determined exclusively by binding arbitration."  Nyhan Decl. ¶ 4, Exh. A.  Agreements to arbitrate employment-related claims, including Labor Code and FLSA wage and hour claims like those at issue here, are enforceable under the FAA.  *See, e.g., Epic Systems*, 138 S.Ct. at 1628; *Iskanian v. CLS Transp. Los Angeles, LLC,* 59 Cal. 4th 348 , 371-372(2014).  Therefore, all of

Plaintiff's claims are covered by the Agreement.

Further, Plaintiff may not maintain her claims on a class or collective basis, because she agreed to arbitrate any and all claims on an individual basis only. The Agreement provides:

> I understand and agree that **all claims that I may have against my Worksite Employer**… **must be brought in my individual capacity** and not as a plaintiff or class member in any purported class action, collective action or representative action proceeding.... The Arbitrator shall not consolidate claims of different alleged employees into one proceeding, nor shall the Arbitrator have the power to her arbitration as a class action, collective action, or representative action.

Nyhan Decl. ¶ 4, Exh. A (at 1.C.) (empgasis added). Accordingly, Plaintiff's class and collective action claims should be dismissed, and Plaintiff should be compelled to arbitrate on an individual basis only. An arbitration agreement waiving class and collective action procedures is fully enforceable. In *Concepcion*, the Supreme Court overruled prior California law limiting enforcement of class action waivers. *Concepcion*, 131 S. Ct. at 1747-53. Since *Concepcion,* California courts have also enforced class action waivers. *See, e.g., Iskanian,* 59 Cal. 4th at 363-66 (finding class action waivers in arbitration agreements enforceable). More recently, in *Epic Systems*, 138 S.Ct. at 1616, the Supreme Court definitively held that, under the FAA, arbitration agreements providing for individualized proceedings must be enforced as written. It therefore enforced arbitration agreements waiving the right to bring class and collective action claims.

As explained above, the Agreement contains a valid, enforceable class and collective action waiver, and the requirement that all claims be arbitrated on an individual basis is expressly drafted. Because Plaintiff has waived the right to bring class or collective action claims against Defendants, the Court should compel all of her claims to arbitration on an individual basis and dismiss her class and collective action claims.

### 4. The Agreement is Enforceable by Amazon Under Equitable Estoppel, Agency, and Third Party Beneficiary Theories.

Amazon is not a signatory to the Agreement. California law does not require it to be a party to the Agreement in order to enforce it here under equitable estoppel, agency, and third party beneficiary theories. Because Plaintiff alleges that Amazon is an agent of NEA, Amazon

has a right to enforce the Agreement and compel Plaintiff's wage claims and employment-related disputes to arbitration.

California courts recognize that a nonsignatory to an arbitration agreement may compel arbitration against a signatory on equitable estoppel and agency grounds. *See Garcia v. Pexco*, 11 Cal. App. 5th 782, 788 (2017); *Boucher v. Alliance Title Co., Inc.,* 127 Cal. App. 4th 262, 271-72 (2005); *Metalclad Corp. v. Ventana Envtl. Org. P'ship,* 109 Cal. App. 4th 1705, 1713 (2003) ("[T]he equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are 'based on the same facts and are inherently inseparable.'"). Pursuant to the equitable estoppel doctrine, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." *Boucher*, 127 Cal. App. 4th at 271. Signatory plaintiffs making statutory claims can be compelled to arbitrate their claims against nonsignatory defendants if the claims involve the same factual allegations as the claims made against the signatory defendants and thus are inherently inseparable from the claims against the signatory defendants. *Laswell v. AG Seed Beach, LLC*, 189 Cal. App. 4th 1399, 1407 (2010).

Courts routinely hold that alleged agents of a party to an arbitration agreement can compel arbitration so long as (1) the alleged wrongful acts of the agents relate to or are done in their alleged capacities as agents and (2) the claims against the alleged agents arise out of or relate to the contract containing the arbitration clause. *Garcia*, 11 Cal. App. 5th at 788 (non-signatory defendant may enforce an arbitration agreement "when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement"); *Leitizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185 (9th Cir. 1986); *Dryer v. L. A. Rams*, 40 Cal. 3d 406, 418 (1985). Here, Plaintiff's alleges that "**each defendant acted** in all respects pertinent to this action *as the agent of other defendants*, carried out a joint scheme, business plan or policy …" Dkt. 1, Compl. ¶ 9 (emphasis added). Amazon is thus entitled to enforce the Agreement as the alleged agent of the Agreement's signatory, NEA. *Garcia*, 11 Cal. App. 5th at 788.

In *Garcia*, the appellate court upheld the lower court's ruling that an arbitration agreement

between a staffing agency and its employee was enforceable as to a non-signatory client employer because, "Labor Code violations are clearly, and indeed expressly, included as one of the types of disputes covered by the arbitration agreement." *Garcia* 11 Cal. App. 5th at 786. The *Garcia* plaintiff signed an arbitration agreement with his employer and was assigned to work for one of his employer's customers. *Id*. at 784. He thereafter filed suit against his employer and the non-signatory employer for, *inter alia,* violations of the Labor Code. The operative complaint in *Garcia* alleged "each and every one of the acts and omissions alleged herein was performed by, and/or attributable to, all DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control." *Id.* at 785. It also alleged that the plaintiff was "under the direction and control of each of the other DEFENDANTS." *Id.* at 785.

Here, Plaintiff has alleged a nearly identical situation. *Garcia* and Plaintiff here were both bound by similarly-worded arbitration agreements, covering actions arising out of the employment relationship. As in *Garcia*, Plaintiff's operative complaint alleges an agency theory of liability against NEA and Amazon as joint employers. Plaintiff admittedly attributes all of the alleged violations jointly to both defendants (NEA and Amazon), and, in fact, does not distinguish between their alleged contributions, choosing instead to refer to them jointly as simply "DEFENDANTS." Thus, Plaintiff alleges Amazon's actions are "intimately founded in and intertwined" with her employment with NEA, which is covered by the Agreement to arbitrate. As was the case in *Garcia*, here Plaintiff's employment-based claims arise under the alleged joint direction and control of co-defendants, one of whom is a signatory to an arbitration agreement. Accordingly, this court should follow the court of appeal in *Garcia*, which affirmed that, under a theory of equitable estoppel, the non-signatory was entitled to compel arbitration of plaintiff's claims against it under the subject arbitration clause. *See also Chico v. Hilton Worldwide, Inc*., CV 14-5750-JFW, 2014 WL 5088240, at *14 (C.D. Cal. Oct. 7, 2014) (recognizing that a nonsignatory may enforce an arbitration agreement); *Ortiz v. Volt Mgt. Corp*., 16-CV-07096-YGR, 2017 WL 2404977, at *3 (N.D. Cal. June 2, 2017) ("findi[ng] that principles of equitable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 36474076.6

11

NO. 3:18-CV-05222-MMC
DEF. AMAZON LOGISTICS' MTC ARBITRATION

estoppel apply [to] allow [a nonsignatory]to compel plaintiff into arbitration); *Lucas v. Michael Kors (USA), Inc.*, CV1-81608-MWF, 2018 WL 6177225, at *7 (C.D. Cal. Aug. 20, 2018); *Vasquez v. San Miguel Produce, Inc.*, 2D CIV. B287696, 2019 WL 1771021, at *5 (Cal. App. 2d Dist. Apr. 23, 2019).

It is also well-established California law that a nonsignatory to an arbitration agreement may enforce an arbitration agreement when they are intended third party beneficiaries of an arbitration agreement. *See Doulon v. USSA Cas Ins. Co.* (2008) 167 Cal. App. 4th 412, 424; *see also Mundi v. Union Sec. Life Ins. Co.* (9th Cir. 2009) 555 F.3d 1042, 1045 ("General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories."). "Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Eastern Aviation Grp., Inc. v. Airborne Express, Inc.* (1992) 6 Cal. App.4th 1448, 1452. Here, the Agreement expressly states that Plaintiff agreed to arbitrate any disputes "that may arise out of the employment context" against her "Worksite Employer [NEA]" and its "agents." Nyhyan Decl. ¶ 4, Exh. A at 1.A. Plaintiff expressly alleges that Amazon is such an agent responsible for carrying out "a joint scheme, business plan or policy" with NEA. See Dkt. 1, Compl. ¶ 9. Accordingly, Amazon is entitled to enforce the agreement as an intended third-party beneficiary.

### 5. The Transportation Worker Exemption Does Not Apply.

Plaintiff has argued that the FAA does not apply because she is exempt as a "transportation worker" although she admits "Plaintiff worked within the state." Dkt. 30, Joint Case Mgmt. Stmt. at p. 2:6-9. Indeed, this is the only argument against the enforceability of the Agreement that Plaintiff has ever posited. A thorough examination of the FAA, its purpose and the applicable exemption leads to the conclusion that Plaintiff is wrong.

Section 1 of the FAA provides a narrow exemption for "contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce.*" 9 U.S.C. § 1 (italics added). The italicized, residual phrase applies to so-called "transportation workers," a term that the Supreme Court has defined as "those workers actually

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DB2/ 36474076.6

12

NO. 3:18-CV-05222-MMC
DEF. AMAZON LOGISTICS' MTC ARBITRATION

engaged in the movement of goods in interstate commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001), *quoting Cole v. Burns Int'l Security Servs*., 105 F.3d 1465, 1471 (D.C. Cir. 1997). This "exemption" requires a "narrow construction" to reach only those who are like "seamen" and "railroad employees" such that disruption of their work would tend to interfere with the flow of goods in interstate or foreign commerce. *Circuit City*, 532 U.S. at 121. And for the FAA to accomplish its purpose of furthering federal arbitration policy, the exemption in section 1 requires a "narrow construction" using a clear test that avoids "complexity and uncertainty" about the enforceability of arbitration agreements. *Id*. at 118, 123, *quoting Allied-Bruce Terminix & Cos. V. Dobson*, 513 U.S. 265, 272-273 (1995).

A "narrow" reading of the exemption respects the exemption's language and underlying legislative purpose because Congress deliberately wrote the exemption using a linguistic formulation—"engaged in foreign or interstate commerce"—that is narrower than formulations that would have extended the exemption to all activities Congress is empowered to regulate under the Constitution's Commerce Clause. *Id*. at 118. Because the exemption was crafted to be narrow, courts cannot reasonably hold that local deliverers "are involved in the flow of interstate commerce because they facilitate the transportation of goods that originated across state lines." *Magana v. DoorDash, Inc*., 343 F. Supp. 3d 891, 900 (N.D. Cal. 2019).[5] While such an attenuated connection to interstate commerce would "be enough under the United States Constitution's Commerce Clause, the FAA is more narrow" in its exemption. *Id*.

Drawing the line between local and cross-border deliverers also respects the Supreme Court's instructions that the exemption's residual clause should "be controlled and defined by reference to the enumerated categories of workers which are recited just before it . . . ." *Circuit City*, 532 U.S. at 115. In other words, the FAA seeks to exempt workers who are "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Asplundh Tree Expert Co. v. Bates* (6th Cir. 1995) 71 F.3d 592, 601. In particular, the exemption "was intended to reach workers who would, by virtue of a strike,

---

[5] Plaintiffs in *Magana* have appealed to the 9th Circuit and filed their Opening Brief on April 15, 2019. Appellee DoorDash's Answering Brief is due May 13, 2019.

'interrupt the free flow of goods to third parties in the same way that a seamen's strike or railroad employee's strike would.'" *Vargas v. Delivery Outsourcing, LLC*, (N.D. Cal. Mar 14, 2016, No. 15-cv-03408-JST) 2016 WL 946112, at *3. Here, Plaintiff is a local delivery driver, and a strike by local delivery drivers would not threaten interruption of commerce at the national level. *See Lee v. Postmates Inc.* (N.D. Cal. Dec. 17, 2018, No. 18-cv-03421-JCS) 2018 WL 6605659 at *7 ("A strike by *local couriers* would presumably have no more effect on interstate commerce than a national strike of, say, cashiers, shelf-stockers, or any number of other classes of employees who are not interstate transportation workers," emphasis added).[6]

Therefore, Plaintiff cannot show that, in making deliveries solely to local customers without ever leaving California, she is "engaged in interstate commerce." Plaintiff does not allege that she personally made deliveries across state lines. She concedes that she "worked within the state" (*see* Dkt. 30, Joint Mgmt. Stmt. at p. 2:6-9) because, in fact, Plaintiff never left California to make any deliveries. Nyhan Decl. ¶ 6. District Judge Phyllis Hamilton of this Court in *Magana* found that, consistent with Ninth Circuit authority, "[c]ourts in this district have declined to find that a delivery driver engaged in interstate commerce where he did not allege that he made interstate deliveries." *Magana*, 343 F. Supp. 3d at 899 ("[Plaintiff] does not allege that he ever crossed state lines as part of his work. As such, there is no allegation that he engaged in interstate commerce under the definition of the narrowly-construed term."), *citing Vargas*, 2016 WL 946112, at *4 (rejecting argument that drivers deliver goods that flow in interstate commerce, instead finding that "[t]he evidence in this case ... does not support the conclusion that Plaintiffs made interstate deliveries even occasionally"); *Levin v. Caviar, Inc*. (N.D. Cal. 2015) 146 F. Supp. 3d 1146, 1152 ("Plaintiff, however, has not shown that he or any other similarly situated delivery driver ever made trips across state lines."). Therefore, for the FAA's transportation worker exemption, it is not sufficient that Plaintiff here makes *intrastate* deliveries of goods, which may have originated out-of-state. *See id*.

---

[6] Labor conflicts at the local level do not threaten nationwide interests in the way that strikes affecting interstate transportation do. "[A] strike by local delivery drivers . . . would not have such an impact." *See Levin*, 146 F. Supp. 3d at 1155; *see also Vargas*, 2016 WL 946112, at *5; *Veliz v. Cintas Corp.*, (N.D. Cal. Apr. 15, 2004, No. C 03-1180 SBA) 2004 WL 2452851, at *10.

Just as in *Magana*, Plaintiff is "not [] transportation worker[s] engaged in interstate commerce. This Court should following the sound reasoning of decisions in this District that conclude the application of the exemption requires that the delivery driver's job regularly involves interstate travel. *See, e.g., Lee,* 2018 WL 6605659 at *7 ("Couriers who make *local* deliveries are not 'directly responsible for transporting goods in *interstate* commerce," emphasis in original); *Vargas*, 2016 WL 946112, at *5; *Levin*, 146 F. Supp. 3d at 1154; *Veliz v. Cintas Corp.* (N.D. Cal. Apr. 15, 2004, No. C 03-1180 SBA) 2004 WL 2452851, at *8. For most courts, a local delivery driver making wholly intrastate deliveries is <u>not</u> "engaged in foreign or interstate commerce" even if the delivered goods originated at some point outside the state. That is true whether the driver delivers food from local restaurants (*Lee, Magana, Levin*) or objects or commercial goods that originated out-of- state (*Lee, Magana, Vargas, Veliz*). Whatever is being transported, a local delivery worker is <u>not</u> "engaged in interstate commerce" within the meaning of the FAA's narrow exemption if he does "not allege that he made interstate deliveries." *Magana*, 343 F. Supp. 3d at 899.

Notably, Congress also crafted the exemption to account for existing grievance procedures that were available—or would soon be available—to workers excluded by the exemption at the time the FAA was enacted in 1925. *Circuit City*, 532 U.S. at 120-121. The purpose behind the exemption was thus not to disfavor arbitration for the exempted classes, but to protect alternative dispute resolution schemes that Congress had specifically devised for the exempted classes. Local delivery drivers as a group have never been subject to such specialized grievance procedures and so courts should be especially hesitant to exclude them from federal arbitration altogether.

Defendants anticipate that Plaintiff will likely rely on two state court deicsions, *Nieto v. Fresno Beverage Co., Inc*., 245 Cal.Rptr.3d 69 (2019) and *Muller v. Roy Miller Freight Lines, LLC*, No. G055053, 2019 WL 1929662, at *8 (Cal. Ct. App. May 1, 2019), to argue that she is exempt from the FAA's coverage under the Transportation Worker exemption. *Nieto* is not binding on this Court and is factually distinguishable, as the facts admitted by the defendant

employer that were the basis for the court's conclusion in that case are not present here.[7] Unlike *Nieto* where the drivers were "subject to and must comply with federal Department of Transportation regulations, and other federal laws and regulations governing motor vehicle safety," *Nieto*, 33 Cal. App. 5th at 76, Plaintiff and the drivers she improperly seeks to represent make local deliveries in small vans or passenger vehicles, which do not require a commercial drivers' license to operate.  Nyhan Decl. ¶ 5.  *Muller* is similarly distinguishable because the employer was "in the transportation industry" as "a licensed motor carrier company that employs truck drivers to transfer freight." 2019 WL 1929662, at *1.  Not so here where the drivers, including Plaintiff, are not truck drivers.  Any broader reading of Nieto and Muller would be directly contrary to the decisions in this District discussed above.  Moreover, based on the foregoing, the Court should follow the straightforward approach of looking at what the workers were engaged to do.  Indeed, in *Epic Systems*, the U.S. Supreme Court issued yet another clear endorsement of arbitration, pointing to the "liberal federal policy favoring arbitration agreements" and reminding courts of the FAA's mandate that they "respect" and "rigorously [] enforce arbitration agreements according to their terms." *See Epic Systems*, 138 S. Ct. 1612, 1621 (2018).  The Supreme Court further cautioned that the FAA's "saving clause" has limited application and "does not save defenses that target arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration.'" *Id.* at 1622, *quoting Concepcion*, 563 U.S. 333, 344 (2011). In other words, the Supreme Court made clear that, given the FAA's mandate in favor of arbitration, this Court should be mindful – similar to the limited application of the "savings clause" – to  narrowly apply the transportation worker exemption, "such that the § 1 exclusion [of transportation workers] provision [is] afforded a narrow construction." *Circuit City*, 532 U.S. at 118.

### B. ALTERNATIVELY, IF THE COURT DECIDES THE FAA DOES NOT APPLY, THE COURT SHOULD STAY PLAINTIFF'S UNPAID WAGES CLAIM WHILE HER OTHER CLAMS PROCEED TO ARBITRATION.

The FAA applies to Plaintiffs' agreement, but even if it didn't, then California law

---

[7] On May 1, 2019, the defendant employer Fresno Beverage Co. filed a Petition for Review to the California Supreme Court.

applies. *See, e.g., Maldonado v. Sys. Servs. of Am., Inc.*, No. 09-542, 2009 WL 10675793, at *2 (C.D. Cal. June 18, 2009) (after finding that exemption to FAA applied, compelling arbitration under state law). Even under the California Arbitration Act ("CAA"), the Agreement is a fully enforceable, valid arbitration agreement, and this action is subject to a stay pending arbitration. Under the CAA, the court "shall, upon motion of a party, … stay the action or proceeding .. until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." Cal. Code Civ. Proc. § 1281.4. That said, Plaintiff may seek to avoid arbitration altogether under Labor Code § 229. First, that section is preempted by the FAA. Even if it wasn't, Labor Code § 229 states in relevant part: "Actions *to enforce the provisions of this article* **for the collection of due and unpaid wages** claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Cal. Labor Code § 229 (emphasis added). "Section 229 is found in article 1 of division 2, part I, chapter 1 of the Labor Code, encompassing sections 200 through 244. Thus, if a cause of action seeks to collect due and unpaid wages pursuant to sections 200 through 244, that action can be maintained in court, despite an agreement to arbitrate." *Lane v. Francis Capital Mgt. LLC*, 168 Cal. Rptr. 3d 800, 806 (Cal. App. 2d Dist. 2014).

Here, Section 229 clearly does not prohibit arbitration of Plaintiff's FLSA claim, which is based on federal law, not the Labor Code. It similarly does not apply to her claim brought under the UCL. Also, the only Labor Code sections from 200 through 244 alleged by Plaintiff's third cause of action for unpaid wages are Labor Code sections 204 (which sets forth lawful timing of payment of wages) and 223 (making it "unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract.") Dkt. 1, Compl. ¶¶ 81, 84. However, there is no private right of action for either of these claims. *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) aff'd, 546 F. App'x 613 (9th Cir. 2013); *see also Hennighan v. Insphere Ins. Solutions, Inc.*, 2013 WL 1758934, at *5-*6 (N.D. Cal. Apr. 24, 2013) (dismissing section 204 claim); *Parsons v. Golden State FC LLC*, 2016 WL 1734010, at *3 (N.D. Cal. May 2, 2016) ("Defendants argue that there is no private right of action for a section 204 violation. . . .Plaintiffs acknowledge that this is true…"); *Gunawan v. Howroyd-Wright Empl.*

*Agency*, 997 F. Supp. 2d 1058, 1068 (C.D. Cal. 2014) (dismissing Labor Code § 223 claim because "there is nothing to indicate that the legislature intended to create a private right of action to remedy violations of sections 221 and 223."). Because Plaintiff's claim for unpaid overtime is made under Labor Code section 510, her claim for overtime must be arbitrated under the Agreement because this claim is <u>not</u> covered within the scope of § 229. The same is true for her other claims. *See Lane*, 168 Cal. Rptr. 3d at 806 (holding that "under section 229, [plaintiff] can maintain only his third cause of action [for unpaid wages]" while his other "statutory Labor Code claims [for unpaid overtime wages (§ 510), unpaid meal period wages (§§ 226.7, 512), waiting time penalties (§§ 201-203), and itemized wage statement violations (§ 226.7)] are subject to arbitration"); see also *Muller*, 2019 WL 1929662, at *8 (Cal. Ct. App. May 1, 2019).

Accordingly, the Court should compel to individual arbitration Plaintiff's FLSA claim and her claims for failure to provide meal and rest periods, failure to pay overtime, failure to provide accurate wage statements, recovery of waiting time penalty for failure to timely pay all final wages, and violation of the UCL. If the Court declines to address the viability of the Section 204 and 223 claims at this time, those claims must be stayed pending arbitration of the other claims.

## IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court compel Plaintiff to individual arbitration and dismiss her impermissible class action and collective action claims, and if any viable claims are found not to be arbitrable, to stay this action pending arbitration of all arbitrable claims.

Dated: May 10, 2019                    MORGAN, LEWIS & BOCKIUS LLP

By   /s/ *Brian D. Fahy*
     John S. Battenfeld
     Brian D. Fahy
     Amy A. McGeever
     Attorneys for Defendant AMAZON
     LOGISTICS, INC. (incorrectly sued as
     AMAZON.COM, LLC)